**UNITED STATES of America, Plaintiff,**

**v.**

**BAY MILLS INDIAN COMMUNITY, Saulte Ste. Marie Tribe of Chippewa Indians, Keweenaw Bay Indian Community, Grand Traverse Band of Ottawa and Chippewa Indians, and Hannahville Indian Community, Defendants.**

**No. M85–335CA.**

United States District Court, W.D. Michigan, N.D.

Aug. 11, 1988.

---

John Smietanka, U.S. Atty., Daniel M. LaVille, Asst. U.S. Atty., Grand Rapids, Mich., for plaintiff.

Michigan Indian Legal Services, Michael D. Petoskey, Traverse City, Mich., for Hannahville Indian Community; Michael C. Parish, Sault Ste. Marie, Mich., of counsel.

Jeanette Wolfley, Native American Rights Fund, Boulder, Colo., for Bay Mills Indian Community.

Daniel T. Green, Sault Ste. Marie, Mich., Bruce R. Greene, Boulder, Colo., for Sault Ste. Marie Tribe of Chippewa Indians.

Garfield W. Hood, L'Anse, Mich., for Keweenaw Bay Indian Community.

William Rastetter, Cedar, Mich., for Grand Traverse Band of Ottawa and Chippewa Indians.

## OPINION

HILLMAN, Chief Judge.

### Factual Background

The United States filed this suit against five Indian tribes in November of 1985, requesting declaratory relief and a permanent injunction that would prohibit the tribes from operating casinos on tribal land in Michigan. The government alleges that defendants' activities are illegal under two federal criminal statutes: The Organized Crime Control Act of 1970, 18 U.S.C. § 1955 ("OCCA") and the Assimilative Crimes Act, 18 U.S.C. § 13 ("ACA"). One of the tribes filed a counterclaim seeking a declaratory judgment that its operations are not unlawful.

The government moved for summary judgment under OCCA on November 21, 1986. The tribal defendants filed a cross-motion for summary judgment under OCCA in January of 1987. During 1987, the parties filed several briefs with the court accompanied by lengthy appendices. At a hearing on the motions held December 2, 1987, the court heard arguments from counsel, requested briefs on the ACA, and took the parties' motions under advisement. The parties subsequently filed cross-motions for summary judgment under the ACA. Final briefs were filed in late April, 1988.

The parties have submitted affidavits, deposition transcripts, and responses to interrogatories which total several hundred pages. The essential facts are not in dispute and all parties concede that the case is ripe for a decision on the cross-motions for summary judgment. Four of the five tribal defendants presently operate casino gambling games on tribal lands. The gaming operations of the Bay Mills Indian Community were closed in August of 1987. Tribal bingo enterprises are not an issue in this case, although some of the tribes operate bingo games as well.

Three of defendants' casinos are open to the public, seven days a week year round. One is open 5 days a week. Most offer blackjack, pull-tabs, poker, and craps games. The tribal casinos generate substantial revenues which are used to fund governmental services. The United States Department of Housing and Urban Development and the Department of Health and Human Services contributed $225,000 to the development of one of the tribes' gaming enterprises. This tribe also received assistance for its gaming operations from the Department of Interior's Bureau of Indian Affairs in the form of a loan guarantee. Several of the tribes' casinos are governed by tribal ordinance. These ordinances impose safeguards such as background checks for employees, annual audits, and bet or winning limits.

The smallest casino in current operation employs about 30 people, over 70 percent of whom are tribal members, the largest employs over 200 people, over 50 percent tribal members. Unemployment for the tribes in 1986 ranged from 32–62 percent. In an affidavit submitted to the court, an anthropologist specializing in Michigan Indian tribes stated that tribal government and tribally owned enterprises probably account for up to one-third of all Indian jobs and that gaming operations account for at least half of all tribal employment. He concludes that the tribal governments are heavily dependent on gaming for their economic welfare. A report of a Michigan House of Representatives Ad Hoc Committee dated May 1986 states that many tribes use gambling as a means of reducing dependence on government funded social welfare programs and that gambling on Indian reservations in Michigan has led to financial benefits for the reservations as well as surrounding Michigan communities.

## Discussion

Before reaching the merits of the dispute, that is, whether or not defendants are violating federal criminal statutes, I feel obligated to consider an issue not raised by the parties: the propriety of enforcing criminal statutes through declaratory judgment and injunction rather than through criminal prosecution.

As a general rule, a court may not enjoin the commission of a crime. *See In re Debs,* 158 U.S. 564, 593, 15 S.Ct. 900, 909, 39 L.Ed. 1092 (1895); *United States v. Zenon,* 711 F.2d 476, 479 (1st Cir.1983); *SEC v. Carriba Air, Inc.,* 681 F.2d 1318, 1321 (11th Cir.1982); *United States v. Jalas,* 409 F.2d 358 (7th Cir.1969); *Wharton's Criminal Procedure* §§ 22–27 (12th ed. 1974); 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2942, pp. 386–87 (1973); 5 *Moore's Federal Practice* ¶ 38.24[3] at 38–199 to 38–204 (2d ed. 1987); *Developments in the Law—Injunctions,* 78 Harv. L.Rev. 994, 1013 (1965); 42 Am.Jur.2d *Injunctions* § 157 (1969). *See also United States v. Guest,* 383 U.S. 745, 769 n. 4 (1966) (Harlan, J., concurring in part and dissenting in part).

The rule is based on two concerns: First, criminal prosecution generally provides an adequate remedy at law so that equitable relief is unnecessary, and, second, injunctive relief may deny a defendant the procedural rights otherwise available in a criminal prosecution. *See Developments, supra* at 1016; *Moore's, supra.*

■ At least three exceptions to the rule that courts will not enjoin criminal activity have developed over the years. A court may properly enjoin activity that is in violation of criminal law, if 1) that activity is a widespread public nuisance, 2) a national emergency warrants departure from the rule, or 3) a statute specifically provides for injunctive relief. *See, e.g., Jalas,* 409 F.2d at 360.

■ Applying these principles to the case before me, I conclude that the United States is not entitled to equitable relief declaring defendants in violation of criminal statutes or enjoining defendants from continuing to violate criminal statutes. Criminal prosecution of defendants under OCCA and the ACA is an adequate remedy at law, readily available to plaintiff. Plaintiff has not shown nor suggested that prosecution of defendants is an inadequate remedy. The government has not argued, nor does the record reflect, for example, that

plaintiff would have difficulty instituting a prosecution, or that the sanctions provided for violations of 18 U.S.C. § 13 and § 1955 are too trivial to provide adequate relief. *See Developments, supra* at 1016–17. *Cf. United States v. City of Philadelphia,* 644 F.2d 187, 193 (3d Cir.1980) (affirming dismissal of complaint for injunctive and declaratory relief, rejecting argument of United States that criminal prosecutions under 18 U.S.C. §§ 241 and 242 are inadequate remedies). The issue of the applicability of OCCA and the ACA to each defendant's conduct may be raised in the context of a criminal prosecution.

Congress could have, but has not, provided for injunctive relief as a remedy for violations of OCCA or the ACA. *Compare United States v. Odessa Union Warehouse Co-op,* 833 F.2d 172 (9th Cir.1987) (enjoining violation of Food, Drug, and Cosmetic Act under 21 U.S.C. § 332(a)); *United States v. White,* 769 F.2d 511 (8th Cir. 1985) (enjoining violations of Internal Revenue Code under 26 U.S.C. § 7408); *SEC v. Carriba Air, Inc.,* 681 F.2d 1318, 1321 (11th Cir.1982) (enjoining securities violations under 15 U.S.C. § 77t); *United States v. Winstead,* 421 F.Supp. 295 (N.D.Ill.1976) (injunctive relief available to enjoin gambling in violation of 18 U.S.C. § 1962 under 18 U.S.C. § 1964).

Nowhere in the record do I find any support for a finding of national emergency authorizing injunctive relief in lieu of prosecution. *Compare Zenon,* 711 F.2d at 479 (district court found appellants had interfered substantially with operations vital to the national defense).

The remaining exception for public nuisance is also inapplicable. *Compare National Assn. of Letter Carriers, AFL–CIO v. Independent Postal System of America, Inc.,* 336 F.Supp. 804, 811 (W.D.Ok.1971) (illegal operation in 45 cities involving 25 million Christmas cards was "widespread public nuisance"), *aff'd,* 470 F.2d 265 (10th Cir.1972); *United States v. McIntire,* 365 F.Supp. 618, 623 (D.N.J.1973) (radio broadcasting without a license is the type of public nuisance which may be restrained by injunction); *United States v. County Bd. of Arlington Co.,* 487 F.Supp. 137, 143–44 (E.D.Va.1979); *United States v. Ira S. Bushey & Sons, Inc.,* 363 F.Supp. 110 (D.Vt.), *aff'd,* 487 F.2d 1393 (2d Cir.1973), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3182, 41 L.Ed.2d 1146 (1974). *See also In re Debs,* 158 U.S. at 592–94, 15 S.Ct. at 909–10. I recognize that the legislature of the State of Michigan has declared that any building used for the purpose of gambling is a nuisance which may be enjoined and abated in state court under certain circumstances. *See* M.C.L.A. §§ 600.3801–3830. *See also* Am.Jur.2d *Gambling* § 118 at p. 195 (1968) (other jurisdictions allowing injunctive relief against gambling as a public nuisance). However, plaintiff has never suggested to the court that it is seeking an injunction in order to remedy a public nuisance or to right a civil wrong. The government seeks injunctive relief solely as a means to enforce federal criminal statutes. Moreover, I find nothing in the record to support a finding that defendants' operations constitute a public nuisance. No evidence suggests that defendants' operations have caused or will cause injury to the public or private interests of the United States. Indeed, a report of the Michigan House Ad Hoc Committee concluded that defendants' activity has led to financial benefits for the reservations as well as to surrounding Michigan communities.

Admittedly, in *United States v. Dakota,* 796 F.2d 186 (6th Cir.1986), the Sixth Circuit upheld the grant of declaratory relief and permanent injunction against defendants for violations of OCCA and the ACA. However, since the propriety of equitable relief was never raised or addressed in either the opinion of the lower court, *see United States v. Dakota,* 666 F.Supp. 989 (W.D.Mich.1985), nor the opinion of the Court of Appeals, I do not consider *Dakota,* either precedential or persuasive authority for granting the equitable relief sought by the government. Aside from *Dakota,* and an unpublished opinion in *United States v. Lummi Indian Tribe,* No. C83–94C (W.D.Wash.1983, February 17, 1983), I have found no case in which the United States sought to enforce OCCA or

the ACA by injunction instead of by indictment.

In addition to the availability of an adequate remedy at law, other equitable considerations persuade me that injunctive relief is inappropriate. First, the record discloses that enjoining defendants' operations would cause substantial financial hardship to the tribes and their members. Nowhere does the government dispute this conclusion. On the other hand, the harm allegedly precipitated by not enjoining defendants consists only of unproved speculation of the possibility that organized crime might infiltrate defendants' operations before the United States could litigate the legality of defendants' operations in criminal prosecutions. I am unmoved by this speculation.

Second, in an equitable proceeding, the court must consider the public interest. While the United States Attorney represents the interests of the citizens of the Western District of Michigan in attempting to close down the tribes' casinos, other Departments and branches in the federal government have considerable interest in encouraging tribal gambling operations. *See California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 107 S.Ct. 1083, 1092–93, 94 L.Ed.2d 244 (1987). The Supreme Court in discussing the "important federal interest" in "encouraging tribal self-sufficiency and economic development" stated:

> The ... reservations contain no natural resources which can be exploited. The tribal games at present provide the sole source of revenues for the operation of the tribal governments and the provision of tribal services. They are also the major sources of employment on the reservations. Self-determination and economic development are not within reach if the Tribes cannot raise revenues and provide employment for their members.

Certainly the well established federal interest in promoting tribal economic self-sufficiency would be thwarted by granting the requested relief.

Congress has been struggling for years to enact a federal law expressly regulating tribal gambling enterprises. The latest bills currently under consideration attempt to balance the federal and state interests in controlling organized crime with federal and tribal interests in economic self-sufficiency, a balance never considered by those who enacted OCCA or the ACA. *See, e.g.,* S. 555, 100th Cong., 1st Sess. (1987); H.R. 1079, 100th Cong., 1st Sess. (1987); S. 1303, 100th Cong. 1st Sess. (1987); 134 Cong. Rec. E2132 (June 22, 1988) (statement of Rep. Coelho); 133 Cong. Rec. S7454 (June 2, 1987) (statement of Sen. McCain); 134 Cong.Rec. H5028 (July 6, 1988) (statement of Rep. Udall). Until Congress acts, however, plaintiff is confined to existing code provisions and the remedies those statutes provide.

In sum, Congress did not provide the extraordinary remedy of injunction as a means to enforce OCCA or the ACA, and I will not imply it.

For similar reasons, I decline to issue a declaratory judgment concerning whether or not defendants are violating criminal law. Declaratory relief, like injunctive relief, is discretionary. *See Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.,* 791 F.2d 460, 462 (6th Cir.1986). Although Rule 57 provides that the "existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate," I am satisfied declaratory relief is inappropriate in this case since "more effective relief can and should be obtained by another procedure." *Cunningham Brothers, Inc. v. Bail,* 407 F.2d 1165 (7th Cir.), *cert. denied,* 359 U.S. 959, 89 S.Ct. 2100, 23 L.Ed.2d 745 (1969); *see also Manley,* 791 F.2d at 462 (listing more effective or better alternative remedy as one of the factors a court should consider in deciding whether a case is suitable for declaratory judgment). The public interest in encouraging tribal self-sufficiency is also a legitimate consideration in deciding whether to grant declaratory relief. *See, e.g., National Wildlife Federation v. United States,* 626 F.2d 917, 924 (D.C.Cir.1980).

Accordingly, the motions for summary judgment are denied and for the reasons stated the case is dismissed.