**LAMAR ADVERTISING COMPANY,**
Plaintiff,

v.

**TOWNSHIP OF ELMIRA, Defendant.**

No. 02–10310–BC.

United States District Court,
E.D. Michigan,
Northern Division.

July 26, 2004.

James J. Walsh, Julie A. Lawson, Bodman, Longley, Ann Arbor, MI, for Plaintiff.

Gary A. Rossi, John D. Mulvihill, Bailey & Rossi, Bloomfield Hills, MI, for Defendant.

## OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

LAWSON, District Judge.

In October 2001, the plaintiff, Lamar Advertising Co., applied to Otsego County and the Michigan Department of Transportation (MDOT) for permits to erect a billboard near a storage facility along M–32 in Elmira Township in Northern Michigan. At the time, the local law required only that Lamar apply to the MDOT for permission to erect the billboard along that state highway. The MDOT eventually approved the application that Lamar had presented to it, but in the intervening months that preceded the approval Otsego County officials—apparently confused about the requirements of local law for signs located along state roads—transferred Lamar's other (then-unnecessary) application to Elmira Township. During the period of delay, the Township changed its own ordinances so that it assumed authority for the location along the state road where Lamar proposed to erect the billboard, and then the Township denied the application that Lamar originally had submitted to Otsego County. Following the denial of the application by Elmira Township officials and the approval of a permit by the MDOT (which was contingent on compliance with local laws), Lamar demanded that Elmira Township provide it with the necessary building permits; but the Township refused and insisted that Lamar comply with the new billboard ordinance, particularly the size restrictions, before any permits would be issued.

Lamar then commenced this action for declaratory and injunctive relief and damages based on several theories grounded in federal and state law, including a violation of Lamar's free speech rights under the

First Amendment via 42 U.S.C. § 1983. After a period of discovery, the parties filed a joint stipulation of facts and cross motions for summary judgment. The Court heard argument on the motion on November 14, 2003 and the matter is now ready for decision. The Court finds that Lamar satisfied all the requirements of the laws in place at the time it applied for permission to erect the billboard in question, and the refusal of the Township to allow Lamar to go forward with its billboard construction along a state highway on the basis of later-enacted ordinances constituted an unlawful prior restraint of commercial speech. The Court, therefore, will grant Lamar's motion for summary judgment and deny Elmira Township's motion for summary judgment.

## I.

Based on the parties' stipulation and the other materials submitted with the motion papers, the following facts appear to be undisputed. Lamar is engaged in the standardized outdoor advertising industry and as part of its business it erects billboards on locations it leases or owns. Revenue is generated by charging advertisers a fee for displaying both commercial and noncommercial messages on Lamar's billboards. Lamar also displays public service messages of civic and charitable organizations on its billboards without charging a fee. To maximize the exposure of it's customers' messages, Lamar endeavors to locate its outdoor signs along well-traveled routes, including state highways.

M–32 is a state federal-aid primary highway that runs in a general east-and-west direction across the northern portion of Michigan's lower peninsula and passes through Elmira Township, which is located about ten miles west of the City of Gaylord. Elmira Township is a Michigan Township governed by a five-member township board and a township supervisor

who has been in office for over fifteen years. The Township consists of a small village area and several tracts of open fields and farm land in a rural setting.

Before 2001, the Township had no ordinance regulating outdoor advertising, although Otsego County had enacted a model ordinance for that purpose. In 1997, the Elmira Township Board unanimously voted to adopt the "Otsego County Signs and Billboards Ordinance." Neither the Otsego County nor the Township ordinances regarding billboards were amended from November 13, 1997 through the date of Lamar's application. Section 18.38.1.4 of the Ordinance regulates non-accessory signs and states:

> Billboards, poster boards, and non accessory signs may be permitted in B2, B3, & I Districts provided the area of the sign does not exceed an area of 200 square feet in B2 & B3 Districts and 300 square feet in I Districts. A non accessory sign or billboard shall not measure longer than three times its width.

> Signs that come under the jurisdiction of P.A. 106 of 1972 are exempt from this subsection.

Otsego County Ord. § 18.38.1.4. The statute referenced in the ordinance, Public Act 106 of 1972, is Michigan's Highway Advertising Act of 1972 (MHAA), codified at Mich. Comp. Laws § 252.301, et seq. This legislation was enacted primarily to prohibit tobacco advertisements on billboards. See Mich. Comp. Laws § 252.303 (proclaiming that "the legislature finds it appropriate to regulate and control outdoor advertising ... as it pertains to tobacco adjacent to the interstate highway, freeway, and primary highway systems, ... secondary highways, major streets, and local roads within this state," and acknowledging that "outdoor advertising is a legitimate accessory commercial use of private property, is an integral part of the market-

ing function and an established segment of the economy of this state"). The Act also requires that sign owners apply to the MDOT for permits to erect new billboards on state roads. *See* Mich. Comp. Laws § 252.306. By its terms, Section 18.38.1.4 of the Ordinance placed exclusive control of billboard regulation along state roads with the MDOT. Therefore, those municipalities that adopted this section of the model ordinance—including Otsego County and Elmira Township—eschewed the authority to regulate billboards along state roads within their boundaries and left that function to the State.

In 2001, Lamar found a location along M–32 where it desired to erect a two-sided billboard; the location was within Elmira Township. On September 26, 2001, Lamar wrote to the Zoning Administrator of Elmira Township requesting a copy of its billboard ordinance. The Township did not respond to Lamar's letter and the township supervisor has no recollection of receiving it. On October 9, 2001, Lamar submitted an application for a street address to the Otsego County Equalization Department for the property on M–32. Rick Scheffer, Lamar's lease manager, testified that it was his understanding that Otsego County, not Elmira Township, had the authority to regulate billboards on M–32 and issue building permits. On October 10, 2001, Lamar submitted an application for plan examination and a building permit to the Otsego County Department of Building and Safety Inspection. On that same day, Lamar also submitted an application for a sign permit and the corresponding application fee to the Otsego County Planning and Zoning Department to obtain permission to erect a billboard at 6912 M–32 West in Elmira Township. On November 7, 2001, Lamar filed with the MDOT two commercial sign permit applications to erect and maintain a commercial sign adjacent to a state trunk line. On December 10, 2001, Lamar signed a lease with the owner of the property on M–32 authorizing erection of the billboard.

The billboard described in Lamar's applications would measure 21 feet, 4 inches by 9 feet, 3 inches (approximately 200 square feet), stand 30 feet tall, and would be double-sided. The location of the proposed billboard would be near the northeast corner of M–32 and Camp Ten Road. The property on which Lamar proposed to erect its billboard is zoned B–1 under the Otsego County Zoning Ordinance and therefore zoning would not permit the placement of the billboard as a non-accessory sign, except that the sign would be visible from M–32, a federal-aid primary highway, and thus exempt from that restriction under Otsego County's ordinance, quoted above.

In the meantime, Elmira Township officials came to realize that the county ordinance it had adopted exempted the regulation of billboards on M–32. The minutes of the February 13, 2001 township board meeting reflect the following discussion:

> Board members attended a road sign meeting with the zoning administrator on February 1st. The township adopted the County sign ordinance in 1997. The county cannot do anything about signs on state roads and the township would need its own zoning. Zoning is working with the prosecutor on this issue which is not resolved at this time.

Jt. Stip. of Facts at ¶ 4, Ex. 3. The board also discussed enacting a sign ordinance at its September 11, 2001 meeting. At a board meeting held on October 9, 2001, the same day Lamar had applied for a property address for its proposed billboard location, Township attorney Brian Graham informed the board that the Township could regulate billboards along M–32 if it passed a regulatory ordinance at a regularly scheduled board meeting, published the new ordinance within fifteen days of its

passing, and filed the ordinance with the county clerk's office. The Elmira Township Board then voted unanimously to place a 180–day moratorium on the establishment or erection of any new billboards within the Township until a new township ordinance could be enacted to regulate billboards on state roads.

On November 13, 2001, the Elmira Township Board unanimously adopted Ordinance No. 1 of 2001 to regulate billboards along M–32 within the township with an effective date of January 4, 2002. The stated purpose of the ordinance is as follows:

> The purpose of this ordinance is to improve and enhance the scenic beauty of the township by regulating and controlling outdoor advertising billboards adjacent to M–32. The township board finds that this regulation and control is essential to the township's economic health, safety, and welfare by reducing visual pollution from those highway corridors.

Twp. of Elmira Ord. No. 1 of 2001, § 2. The ordinance (a) prohibits billboard faces from exceeding a surface area of 72 square feet; (b) restricts billboards to a height of no more than 20 feet; and (c) requires a minimum distance of 3,000 feet between billboards. When the Township enacted the ordinance, it did not follow the notice and hearing procedures of the Township Zoning Act, Mich. Comp. Laws § 125.271, *et seq.* It is the Township's position that it was not required to follow these procedures but that it could adopt Ordinance No. 1 under its police powers pursuant to the Township Ordinance Act, Mich. Comp. Laws § 41.181, *et seq. See id.* at ¶ 16.

On November 14, 2001, Tracy Schlink–Herzberg, the Otsego County Zoning Administrator, responded to Lamar's October 10 sign application by sending a form that stated that the property on which Lamar sought to erect its billboard was zoned B–1, local business. Ms. Schlink–Herzberg also checked the box marked "Other Restrictions or Permits" and wrote next to it the following: "Township Approval Per County Zoning, this District does not allow billboards and non-accessory signs." Jt. Stip. of Facts Ex. 10. On that same day, Ms. Schlink–Herzberg sent a letter enclosing a copy of Lamar's sign application and permit to Elmira Township Supervisor Ralph Robarge. In the letter, Ms. Schlink–Herzberg stated the following:

> Recently my office received an application to construct a billboard in your township. This sign is along M–32 West. Attached you will find the application and site plan for this sign. According to Public Act 106 of 1972, townships have full authority over the permitting of such signs along major highways, and I can be an advisor only at this stage. This application does not conform to the Otsego County Zoning Ordinance. The property in which the sign is to be placed is zoned B1, Local Business, and the Ordinance does not allow for billboards in this District. Since the township has adopted the Otsego County Zoning Ordinance in its entirety, including Section 18.38.1.4, it is my recommendation that you deny this sign. However, it is the township's responsibility to approve or deny. What I need from the township is a written decision. If you approve this billboard, I will be allowed to permit the placement only. If you chose to deny this sign, a representative of the township must contact the applicant. Thank you for your cooperation and if you have any questions feel free to contact me.

Pl.'s Mot. Summ. J. Ex. 6. Ms. Schlink–Herzberg obviously made several errors in her correspondence with Lamar and Mr. Robarge: she overlooked language in the county ordinance exempting signs along state highways; she erroneously informed Lamar and Supervisor Robarge that

Township approval was necessary for La-mar's proposed sign along M–32; and she mistakenly wrote that the Township could not approve the permit under county zoning laws that by the terms of the ordinance did not apply along M–32. Of course, under Section 18.38.1.4 of the county zoning ordinance, Lamar was not required to seek a sign permit from the county, or for that matter from Elmira Township since the Township did not have a regulatory ordinance if effect at the time and had adopted the county ordinance. Mr. Robarge received the letter from Ms. Schlink–Herzberg on November 14, 2001.

From November 14, 20001 until January 8, 2002, Elmira Township took no further action on Lamar's applications for a sign permit or a building permit. Both Robarge and Purgiel testified in their depositions that they were not aware of any time frame within which the Township was required to respond to the application. *See* Pl.'s Mot. Summ. J. Ex. 3, dep. of Ralph Robarge at 18; Pl.'s Mot. Summ. J. Ex. 4, dep. of Diane Purgiel at 9. In fact, both Robarge and Purgiel testified that prior to the enactment of the Elmira Billboard Ordinance on November 13, 2001, the Township relied on Otsego County to handle all applications for sign and building permits for billboards within the Township; they did not expect anyone desiring such a permit to file an application with the Township because the township did not have a formal application process. On January 8, 2002, the Elmira Township Board voted unanimously to deny Lamar's billboard application. Robarge testified in his deposition that the board followed the advice in Ms. Schlink–Herzberg's letter and believed that it had the discretion to grant or deny Lamar's application. In a letter to Lamar dated January 9, 2002, Mr. Robarge stated:

> I received your application, from Otsego County Zoning, to erect a billboard in Elmira Township, Parcel Code # 060–021–300–010–02.
>
> Elmira Township has adopted Otsego County Zoning Ordinance in its entirety, which includes section 18.38.1.4 (see inclosed [sic] copy).
>
> This proposed property is zoned B–1, which does not allow for billboards.
>
> There was a motion, at the January 8, 2002 Elmira Township Meeting, by Trustee Leonard Skop, "To deny this application as billboards are not allowed in a B–1 District"; this was seconded by Trustee Theresa Plachta, the motion passed unanimously.
>
> The application is therefore denied.

Jt. Stip. of Facts Ex. 15. On January 23, 2002, Sara M. Schmidt, Otsego County Planning and Zoning Department Secretary, wrote to Lamar and confirmed that its billboard application had been denied. *See id.* Ex. 16.

On January 30, 2002, MDOT approved Lamar's sign permits, numbers 44024 and 44025, for the erection of a back-to-back billboard measuring 21 feet, 4 inches × 9 feet, 4 inches (approximately 200 square feet) at Lamar's proposed location on M–32 in Elmira Township. The permits provide the following conditions:

> This permit is issued subject to the following provisions and conditions. The permittee agrees to comply with these provisions and conditions by the acceptance of the permit.
>
> .     .     .     .     .
>
> *Other Legal Requirements*—The permittee shall be aware that this permit in *no* way relieves her or him from any other responsibility under law or contractual obligation. It remains the responsibility of the permittee to comply with all other statutory requirements, applicable local

ordinances, and all terms of the lease with the land owner.

Def.'s Mot. Summ. J. Ex. I.

On April 16, 2002, Lamar wrote to Elmira Township asking that its sign application be "expedited" since the permits had been issued by MDOT. *See id.* Ex. J. On June 14, 2002, Elmira's attorney wrote a letter to Lamar's attorney and stated, in pertinent part, the following:

> The Elmira Township Board enacted a billboard ordinance in December 2001, which went into effect January 4, 2002. As a result, at the time [Lamar] was authorized to erect the billboard under the MDOT permit [, which was January 30, 2002], Elmira Township had a billboard ordinance in effect.
>
> [Lamar] has never filed an application for a permit under the Elmira Township Billboard Ordinance. Therefore, your client must submit an application to Elmira Township which will then be reviewed under the terms of the billboard ordinance. Any attempt at litigation prior to a final decision by the Elmira Township Board pursuant to the billboard ordinance would not be ripe.

*Id.* Ex. K.

Lamar did not file an application for a billboard permit with Elmira Township under the Elmira Billboard Ordinance, nor did it request rezoning of the proposed site of its billboard from B–1 to B–2, or request an amendment of the ordinance regarding the size and height restrictions. Instead, on August 20, 2002 Lamar filed its complaint in this Court alleging that Elmira Township violated its First Amendment rights to free speech pursuant to 42 U.S.C. § 1983 by denying its application for a billboard. Lamar also alleges that the Township's administration of the Otsego County Zoning Ordinance constituted a prior restraint of protected speech in violation of its constitutional rights. In addition, Lamar contends that the Township's

sign ordinance is invalid because the township did not follow the procedures of the Michigan Township Zoning Act. Lamar seeks a declaratory judgment that Lamar is entitled to a billboard permit and an injunction against Elmira from interfering with Lamar's erection of a billboard at the proposed site.

As noted earlier, the parties have presented their dispute to the Court in a joint stipulation of facts and cross motions for summary judgment.

## II.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The parties have filed cross motions for summary judgment, and neither suggests that there are facts in dispute. Nonetheless, the Court must apply the well-recognized standards when deciding cross motions; "[t]he fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate." *Parks v. LaFace Records,* 329 F.3d 437, 444 (6th Cir.2003). Thus, when this Court evaluates cross motions for summary judgment, it "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.,* 336 F.3d 503, 506–07 (6th Cir.2003).

A motion for summary judgment under Fed.R.Civ.P. 56 presumes the absence of a genuine issue of material fact for trial. The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Simmons–Harris v. Zelman,* 234 F.3d 945, 951 (6th Cir.2000).

### A.

The parties agree that at the time Lamar applied for permits to erect its billboard, only the MDOT had jurisdiction to regulate the area in question. The MHAA allowed townships to enact ordinances "to regulate and control the size, lighting, and spacing of signs and sign structures," Mich. Comp. Laws § 252.303(a), but Elmira Township had not passed such an ordinance at the time. The MHAA requires that "a permit shall be issued or denied within 10 business days after proper receipt of the permit form and the permit fee from the applicant," Mich. Comp. Laws § 252.309, but the MDOT failed to comply with this mandate in acting on Lamar's application in this case. The parties agree further that Elmira Township enacted its new sign ordinance to become effective after the MDOT should have acted on Lamar's application.

It plainly appears from the undisputed facts in this record that Lamar's application ought to have been granted under the rules in effect on the application date. It is equally clear that Lamar's proposed sign would not conform to the size and dimension restrictions in the Township's new ordinance. Lamar maintains that the new ordinance is unlawful and unenforceable because it "over-regulates" commercial speech, that is, it is more extensive than necessary to address a legitimate municipal purpose; and it was not enacted in conformity with the notice and hearing requirements of the Township Zoning Act, Mich. Comp. Laws § 125.584. The Township counters by arguing that its new ordinance is a valid regulation of the time, place and manner of commercial speech; the ordinance was validly enacted under the authority of the Michigan Township Act, Mich. Comp. Laws § 41.181; and the permits eventually issued by the MDOT require Lamar to comply with local laws.

■ The Court does not find it necessary to address the foregoing arguments because it believes that it must view the permitting process and the government action on Lamar's applications under the rules that were in effect on the date of those applications. *See Southern Co-op. Development Fund v. Driggers,* 696 F.2d 1347, 1355 (11th Cir.1983) (holding that a later-enacted zoning ordinance could not be retroactively applied by a county commission to reject a landowner's subdivision plat application where the application complied with the commission's regulations in effect at the time it was filed); *Sprint Spectrum L.P. v. Jefferson County,* 968 F.Supp. 1457, 1469 (N.D.Ala.1997) (holding that a cellular phone provider was entitled to have its pending application to erect a cellular phone tower decided on the basis of the county zoning ordinance provisions in effect on the date the application was filed, rather than on the proposed zoning provisions not yet adopted). The Court finds that equity requires this holding. *See 754 Orange Ave., Inc. v. City of West Haven, Conn.,* 761 F.2d 105, 113 (2d Cir. 1985) ("Even as a matter of zoning law ... a court will not allow changed building zone regulations to act as a bar to a building project where it would be inequitable to do so"); *see also Coral Springs Street Systems, Inc. v. City of Sunrise,* 371 F.3d 1320, 1334 (11th Cir.2004) (stating that when a property owner incurs a substantial investment of time or money in reasonable reliance on existing laws and with no

reason to know that the laws are likely to change, he may acquire a vested right in a building permit); *United States v. County Bd. of Arlington County*, 487 F.Supp. 137, 141 (D.Va.1979) (stating that where "a special use permit has been granted under a zoning classification, a bona fide site plan has thereafter been filed and diligently pursued, and substantial expense has been incurred in good faith before a change in zoning, the permittee then has a vested right to the land use described in the use permit and he cannot be deprived of such use by subsequent legislation"). Consequently, the vitality of Township of Elmira Ordinance No. 1 of 2001 has no bearing on the Township's actions concerning Lamar's billboard project in this case.

Here, Lamar applied for sign permits and a building permit to put up its sign. Although it submitted these filings to an Otsego County official, the applications were transferred to Elmira Township officials. After the State approved the sign permits, the Township would not issue a building permit to allow construction of the signs. The Township officials apparently believed that they had the discretion under the adopted Otsego County ordinance to withhold approval to erect the billboard.

Lamar argues that the messages it displays for its customers on the billboards it constructs constitute both commercial and non-commercial speech protected by the First Amendment, and that withholding permission on its sign application amounts to an unlawful prior restraint. The First Amendment, applicable to the states and their political subdivisions, *see 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 489 n. 1, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996); *Lovell v. City of Griffin*, 303 U.S. 444, 450, 58 S.Ct. 666, 82 L.Ed. 949 (1938), states that "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend. I. Commercial speech is protected under the First Amendment,

*see Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), but local governments may regulate the time, place and manner of such speech if the regulations (1) "are narrowly tailored to serve a substantial government interest" and (2) "leave open ample alternative channels for communication of the information." *Cleveland Area Bd. of Realtors v. City of Euclid*, 88 F.3d 382, 385 (6th Cir.1996).

■ "A 'prior restraint' exists when speech is conditioned upon the prior approval of public officials." *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 889 (6th Cir.2000). "Although prior restraints 'come to the court bearing a heavy presumption against their validity,' they are not unconstitutional *per se*." *King Enterprises, Inc. v. Thomas Twp.*, 215 F.Supp.2d 891, 914 (E.D.Mich.2002) (quoting *Nightclubs*, 202 F.3d at 889). However, a licensing scheme that requires permission in advance to display a message based on the content of the message is not tolerated. *See Forsyth County v. The Nationalist Movement*, 505 U.S. 123, 130, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992) (citing *United States v. Grace*, 461 U.S. 171, 177, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983)).

There is no suggestion in this record that the action by Elmira Township or Otesgo County in withholding approval of Lamar's sign application was tied to the content or likely content of the messages Lamar intended to display. However, the Supreme Court has identified "two evils that will not be tolerated" in licensing schemes that require prior government permission to display or express a protected message: "First, a scheme that places unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship.... Second, a prior restraint that

fails to place limits on the time within which the decision maker must issue the license is impermissible." *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 225, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990); *see also Nightclubs,* 202 F.3d at 890 (citing *East Brooks Books, Inc. v. City of Memphis,* 48 F.3d 220, 225 (6th Cir.1995)).

■ In this case, Elmira Township officials exercised discretion that they did not have in withholding approval of permission for Lamar to proceed with its sign project until after the Township's new sign ordinance took effect. The denial was not based on noncompliance with the ordinance. Rather, it was based on the incompatibility of the proposed land use with Otsego's Zoning ordinance that the Township adopted, but which did not apply to billboards that fell within the jurisdiction of the MDOT through operation of the ˙MHAA. Lamar filed its application on October 10, 2001 and it was forwarded to the Township on November 14, 2001. The Township took no action on the application until January 8, 2002. As noted previously, both Supervisor Robarge and Treasurer Purgiel testified in their depositions that they were not aware of any time frame within which the township was required to respond to the application. *See* Pl.'s Mot. Summ. J. Ex. 3, dep. of Ralph Robarge at 18; Pl.'s Mot. Summ. J. Ex. 4, dep. of Diane Purgiel at 9. In fact, they both testified that prior to the enactment of the Elmira Billboard Ordinance on November 13, 2002, the Township relied on Otsego County to handle all applications for billboard or sign permits within the Township and did not expect anyone desiring such a permit to file an application with the Township because the Township did not have a formal application process. *See id.* dep. of Robarge at 9–10; dep. of Purgiel at 14–15.

The law in effect at the time Lamar filed its applications did not disallow the construction of a billboard at the desired location. Therefore, the Township deprived Lamar of its First Amendment rights by denying Lamar a permit based on an improper interpretation of the zoning ordinance. Lamar has established, as confirmed by the eventual issuance of permits by the MDOT, that Lamar as a matter of law was entitled to a permit to erect a billboard. It is likewise entitled, therefore, to the declaratory and injunctive relief it seeks with respect to proceeding with the erection of its billboard.

B.

The Township also argues that under *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), Lamar's claims are not ripe for review. In that case, the Supreme Court held that a Fifth Amendment taking claim is not ripe for adjudication until "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." In *Montgomery v. Carter County, Tennessee,* 226 F.3d 758, 765 (6th Cir. 2000), the Sixth Circuit stated that "the holding of *Williamson County,* therefore, is that takings claims do not ripen in zoning cases until (1) there has been a final decision by the relevant state decision maker and (2) the property owner has utilized appropriate state inverse condemnation procedures." The Township contends that because Lamar did not petition Otsego County requesting a re-zoning of the property from B–1 to B–2, an amendment to the regulatory billboard ordinance to allow billboards in the B–1 zoning district, and a variance to relax the size and height restrictions, Lamar has failed to receive any final determination from an administrative agency in this case.

This Court disagrees. Lamar is not asserting a takings claim requiring a final administrative ruling as discussed in *Williamson,* but instead it is seeking to recover for a violation of its First Amendment right to free speech under 42 U.S.C. § 1983. Because Elmira has restrained Lamar's exercise of its free speech rights, judicial intervention is favored, even absent final administrative resolution. *See Peachlum v. City of York, Pennsylvania,* 333 F.3d 429, 435–38 (3d Cir.2003). Lamar does not seek just compensation for an unconstitutional taking under the Fifth Amendment. Rather, it complains of a violation of its rights under the First Amendment resulting from the inaction and eventual disapproval of its permit requests. Lamar contends the actions of the Township officials was arbitrary and capricious. Therefore, the limitations that surround taking claims do not prevent Lamar from turning directly to court for relief. *See Pearson v. City of Grand Blanc,* 961 F.2d 1211, 1214–15 (6th Cir.1992).

### III.

Based on the undisputed facts presented, the Court finds that the action of Elmira Township in withholding permission from the plaintiff to erect a billboard at 6912 M–32 West in Elmira Township constituted an unconstitutional prior restraint.

Accordingly, it is **ORDERED** that the plaintiff's motion for summary judgment [dkt # 21] is **GRANTED.**

It is further **ORDERED** that the defendant's motion for summary judgment [dkt # 20] is **DENIED.**

Lamar also has filed a motion to preclude the defendant from offering the testimony of an expert witness on the ground that the subject matter of his proposed testimony amounts to legal conclusions, and therefore it is beyond the scope allowed by Fed.R.Evid. 702. The Court finds that the decision on the summary

judgment motions renders that motion *in limine* moot. Therefore, it is further **ORDERED** that the motion [dkt # 22] is **DENIED** as moot.

It is further **ORDERED** that counsel for the parties shall appear before the Court on Monday, August 2, 2004 at 2:30 p.m. to discuss disposition of the remaining issues in the case, including the plaintiff's damages claim.