JOHN L. RHYNE v. FLINT MANUFACTURING COMPANY.

(Filed 23 November, 1921.)

**1. Injunction—Surface Water—Division of Stream.**

An injunction will lie against an upper proprietor of lands diverting the natural flow of water thereon to the damage of the lower proprietor.

**2. Same—Pollution of Stream—Property.**

Where a cotton mill and settlement has diverted the natural flow of water on its lands containing sewage and filth from its mill upon the lands of the adjoining lower proprietor so as to pollute his springs and cause him to cease to use it for his cattle and his land for pasture, a permanent injunction will lie.

**3. Same—Health—State Board of Health—Sewage—Treatment—Injunction—Damages.**

> Where a cotton mill and settlement has polluted a stream upon its own land and diverted its flow upon the lands of a lower proprietor, which caused him to abandon his spring for watering his cattle and his pasture, the fact that the mill company had constructed a septic plant in accordance with plans furnished by the State Board of Health, C. S., 7179 *et seq.*, will not exonerate the defendant from injunction or liability for damages.

**4. Same—Private Corporations—Eminent Domain—Property—Constitutional Law—Due Process.**

> The action of the State Board of Health in directing the establishment of a septic tank by a cotton mill and settlement for the treatment of sewage of a stream which the mill company diverted to the land of the lower proprietor, the compliance by the company cannot have the effect of concluding the right of the lower proprietor for injunctive relief and damages caused thereby to his lands, as that would be to permit a private corporation, without the right of eminent domain, to take the property of another without his consent or giving him a day in court.

**5. Same—Actions and Defenses—Offer to Purchase—Inconvenience.**

> A cotton mill corporation which has unlawfully diverted its polluted stream upon the lands of a lower proprietor, amounting to the taking of property and menace to health, may not successfully defend a suit for injunction and damages by offering to buy a part of the plaintiff's lands, or on the ground that a permanent injunction would work an inconvenience in the operation of its mill.

APPEAL from a continuance of a restraining order to the hearing by *Ray, J.,* at chambers in Charlotte, 10 October, 1921, from GASTON.

The defendant company owns a tract of land on which is situated a cotton manufacturing plant of 23,040 spindles and a village of 70 tenement houses occupied by its employees. The plaintiff owns a contiguous tract of land of 252 acres, and the defendant has constructed and operates a septic tank and filter through which the sewage flows from said plant and tenement houses, and then through an open ditch located near a branch which runs through a part of plaintiff's lands.

This is an appeal in a proceeding for a perpetual injunction in which the restraining order was continued to the hearing. The plaintiff alleges and files numerous affidavits that the defendant, since February, 1921, has discharged the sewage and filth from its mill and tenement houses through a sewerage system constructed by it, without properly purifying the same, into a dry ditch near plaintiff's land, from which point it naturally flows upon his land and into a small branch running through his pasture and by his spring whereby the branch and spring have been grossly polluted and rendered unsafe and unfit for use by persons or cattle, and thereby caused the abandonment of the spring and forced

the plaintiff to abandon his pasture lands and to move his cattle, used' for the purposes of a public dairy, therefrom.

The injunction was continued to the hearing, and the defendant appealed. Subsequently, the court granted a stay of the restraining order till 2 November, 1921, so as to give the defendant an opportunity to make such changes as may be necessary to protect the plaintiff.

*B. Capps, Tillett & Guthrie, and A. L. Quickel for plaintiff.*
*Mason & Mason, S. J. Durham, and Mangum & Denny for defendant.*

CLARK, C. J. The defendant seeks to assert the rights of a dominant tenant to flow the surface water and debris from its premises across the plaintiff's land. The evidence is uncontradicted that the water that falls on defendant's land would, if not diverted by the defendant, naturally flow in another direction (with a slight exception), and that the water used to flush defendant's sewerage system is diverted from its natural flow. Upon these facts, aside from all question of pollution creating a nuisance, the defendant is a trespasser and plaintiff would be entitled to an injunction. The settled law is that while the dominant proprietor can accelerate the flow he cannot divert the water from his premises to that of another upon which it would not naturally flow. *Roberts v. Baldwin,* 151 N. C., 407, and cases there cited. The defendant is a private corporation, and does not possess the right of eminent domain by which he might acquire such right in a proper case upon assessment of damages. *Jenkins v. R. R.,* 110 N. C., 438, and citations in 2 Anno. Ed.

Upon the affidavits of the plaintiff and admissions of the defendant the restraining order was properly continued to the hearing. The defendant seems to rely largely upon the fact that it has constructed a septic tank in accordance with plans furnished by the State Board of Health. C. S., 7129 to 7144, which gives the State Board of Health authority to require sewerage or sanitary privies. We do not think, however, that this will exonerate the defendant from injunction, or liability in damages to the plaintiff who had no day in court or hearing as to the sufficiency of the septic tank either as prescribed or as built. Besides, the Board of Health had no authority to pass upon this matter as against the plaintiff. To allow such a defense to protect the defendant against the nuisance which it has created would be to permit the defendant, a private corporation, to take the property of the plaintiff without his consent, and even without opportunity to be heard. *Donnell v. Greensboro,* 164 N. C., 330.

There are cases in which the Court has denied a restraining order and injunction. But that line of cases has been reviewed by *Justice Hoke* in *Cherry v. Williams,* 147 N. C., 452, where he observes that the cases

which had denied the restraining order on the ground that the injury was only apprehended, or contingent, obtained generally where the injury was threatened by reason of some industrial enterprise which gave promise of benefits to the community, affecting rather the comfort and convenience than the health of adjacent proprietors and giving indication that adequate redress might, in most instances, be afforded by an award of damages, as in *Simpson v. Justice,* 43 N. C., 115; *Hyatt v. Myers,* 71 N. C., 271; *Hickory v. R. R.,* 143 N. C., 451, saying: "But so far as we have examined, whenever this principle has been apparently applied with us in cases which threatened serious injury to health and injunctive relief was denied to claimant, it will be found either that there was some defect in the proof offered by plaintiff, or such proof was successfully controverted by defendant, or there were other conditions present which required the application of some other principle than that which the defendant here invokes for his protection." That case is cited and approved in *Berger v. Smith,* 160 N. C., 205. But in this case:

1. The plaintiff has diverted the flow of the water which he has used in operating his sewerage plant in a direction in which it does not naturally flow, and hence the plaintiff was entitled to his injunction, irrespective of the allegations of nuisance.

2. Upon the affidavits and admissions, the defendant is committing a serious nuisance upon the plaintiff's land, and is jeopardizing the health of the community by the injury to the spring, and otherwise, and to the cattle used in the plaintiff's dairy.

3. The septic tank may or may not have been constructed according to the regulations of the State Board of Health, and the defendant admits that it has not always operated efficiently.

4. While defendant alleges that it has offered to purchase that part of the plaintiff's land affected by the nuisance, this would amount to a practical grant or license to the defendant to perpetually maintain this nuisance alongside of the plaintiff's remaining land. This the defendant cannot compel the plaintiff to accept. The defendant has no power of eminent domain, and to allow such defense would enable powerful individuals or corporations to force out undesired neighbors, by maintaining a nuisance, and would enable them to repeat the Biblical instances of Naboth's vineyard (1 Kings, ch. 21), and Nathan's ewe lamb (2 Sam., ch. 12).

The defendant contends strenuously that a permanent injunction would work an inconvenience to it in the operation of its mill. It has been operated for many years without being a nuisance to the plaintiff, and has only become such since February last, when it installed its new and unsatisfactory sewerage plant, and in any event it has no right to

force the plaintiff to abandon the use of his own land for pasture for his dairy cattle and to abandon the use of his spring in order that the defendant may experiment with a disposal of sewage in a manner that is a nuisance to the plaintiff, however satisfactory or convenient such method may be to the defendant.

In *Lumber Co. v. Cedar Works,* 158 N. C., 164, *Brown, J.,* says: "It would be a most extraordinary destruction of the rights of property if a private corporation, possessing no right of eminent domain, could seize the lands of another, to which it has no semblance of title, and appropriate them to its own use simply because it was able to respond in damages. This contention of the defendant's is, in our opinion, without support in reason or authority," and he quotes (at p. 169) from *Connor, J.,* in *Cozard v. Hardwood Co.,* 139 N. C., 284, as follows: "While, as found by his Honor, it is reasonable and even necessary to the successful operation of defendant's enterprise that they carry their timber over the plaintiff's land to reach the markets, and while there may be no injustice to him in permitting them to do so, and while his opposition may be either sentimental or selfish, yet the courts may not violate or weaken a fundamental principle upon the strict observance and enforcement of which the security of all private property, so necessary to the safety of the citizen, is dependent. The guarantees upon which the security of private property is dependent are closely allied, and always associated with those securing life and liberty. Where one is invaded, the security of the other is weakened."

The defendant must attain its ends, advance its interests, or serve its convenience, by some method, whether in improving its sewerage system or otherwise, which shall be in accordance with the age-old maxim that a man must use his own property in such a way as not to injure the rights of others—*"sic utere. tuo, ut alienum non laedas."*

The judgment continuing the restraining order is

Affirmed.