## HARRISONVILLE v. W. S. DICKEY CLAY MANUFACTURING CO.

No. 559. Argued March 20, 1933.—Decided May 8, 1933

Mr. *Raymond G. Barnett* for petitioner.

Mr. *Leland Hazard,* with whom Mr. *Maurice H. Winger* was on the brief, for respondent.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

W. S. Dickey Clay Manufacturing Company, a Delaware Corporation, owns a stock farm of 300 acres lying near the sewage disposal plant of the City of Harrisonville, Missouri. A small, meandering, intermittent stream called Town Creek flows through a detached portion of the farm, consisting of 100 acres, devoted solely

to pasturage. Since 1923, a drain pipe has discharged into the creek, at a point in the pasture, the effluent from the disposal plant of the City's general sewage system. In 1928, the Company brought, in the federal court for western Missouri, this suit against the City, alleging injury to the property through drainage of the effluent from the disposal plant and seeking both damages and an injunction. The land was acquired by the Company in 1925 and has been leased ever since. Prior to 1925 it was owned by W. S. Dickey, the president and majority stockholder of the Company, who is a resident of Missouri. Jurisdiction of the federal court is based solely on diversity of citizenship. No federal question, constitutional or statutory, is involved.

The disposal plant consists of an Imhoff tank and the drain. It was installed by the City in 1923, after conference with the Public Health Department of the State; and has since been in continuous use. The tank is a primary method of sewage disposal which removes only sixty per cent. of the putrescible organic matter. An additional plant for further treatment of the sewage, which would have removed thirty per cent. more of such matter, could have been installed in 1923. But such additional treatment was not then common in Missouri; nor was it then recommended by the Health Department. In 1928, additional treatment of the sewage was recommended by it; but was not required. The population of the City is 2000; but only about 1400 of the inhabitants are served by the general sewage system. The cost of the general sewage system and disposal plant was about $60,000. The cost of a secondary disposal plant would be $25,000 to $30,000. It is asserted by the City that it cannot erect such a plant now because it has no surplus revenues and its borrowing capacity is nearly exhausted.

The District Court found that the detached portion of the Company's land used for pasturage is seriously affected by the pollution of Town Creek; that the aggregate loss

in rental for the five years during which it owned the land had been $500; and that it would cost $3500 to restore the creek to the condition existing prior to the nuisance. The court, therefore, awarded damages in the sum of $4000. It held, also, that the Company was entitled to an injunction; but allowed the City six months within which to abate the nuisance by introducing some method that would prevent the discharge of putrescible sewage into the creek. Upon an appeal by the City, the Circuit Court of Appeals modified the decree by eliminating therefrom the item of $3500 damages. As so modified the decree was affirmed. 61 F. (2d) 210. The Company acquiesced in the modification; and in this Court the City did not question the propriety of the award of $500 damages. But, on the ground that the injunction should have been denied, it petitioned for a writ of certiorari, which was granted. 288 U.S. 594.

The City contends that the injunction should not issue, because, according to the law of Missouri, the sewer system and disposal plant constitute a permanent nuisance; that in granting the injunction instead of requiring the Company to seek damages for the depreciation of the property, the federal courts acted in direct conflict with the law of the State; and that since the question involved is in essence the extent of rights incident to ownership of real property, the state law is controlling. The Company denies that under the decisions of the state courts the nuisance is to be deemed a permanent one; and insists that for this continuing nuisance the remedy of damages is inadequate.

*First.* The discharge of the effluent into the creek is a tort; and the nuisance, being continuous or recurrent, is an injury for which an injunction may be granted. Thus, the question here is not one of equitable jurisdiction. The question is whether, upon the facts found, an injunction is the appropriate remedy. For an injunction is

not a remedy which issues as of course. Where substantial redress can be afforded by the payment of money and issuance of an injunction would subject the defendant to grossly disproportionate hardship, equitable relief may be denied although the nuisance is indisputable. This is true even if the conflict is between interests which are primarily private. Compare *Parker* v. *Winnipiseogee Lake Cotton & Woolen Co.*, 2 Black 545, 552–553.[1] Where an important public interest would be prejudiced, the reasons for denying the injunction may be compelling.[2] See *Osborne* v. *Missouri Pacific Ry. Co.*, 147 U.S. 248, 258, 259; *New York City* v. *Pine*, 185 U.S. 93, 97; *Cubbins* v. *Mississippi River Commission*, 204 Fed. 299, 307.[3] Such we think is the situation in the case at bar.

[1] See also *McCarthy* v. *Bunker Hill & Sullivan Mining Co.*, 164 Fed. 927, 940; *Bliss* v. *Washoe Copper Co.*, 186 Fed. 789; *Sussex Land & Live Stock Co.* v. *Midwest Rfg. Co.*, 294 Fed. 597, 604–605; *Smith* v. *Staso Milling Co.*, 18 F. (2d) 736; *De Blois* v. *Bowers*, 44 F. (2d) 621. In these cases the interest of the community was incidentally involved. See, however, cases of physical occupation of the land, constituting a continuing trespass, where the plaintiff was confined to an action for damages because the injury was small and an injunction would have imposed a great burden on the defendant. *E. g., Coombs* v. *Lenox Realty Co.*, 111 Me. 178; 88 Atl. 477; *Lynch* v. *Union Institution for Savings*, 159 Mass. 306; 34 N.E. 364; *Hunter* v. *Carroll*, 64 N.H. 572; 15 Atl. 17; *Crocker* v. *Manhattan Life Ins. Co.*, 61 App. Div. 226; 70 N.Y.S. 492. Compare *Kershishian* v. *Johnson*, 210 Mass. 135; 96 N.E. 56.

[2] In some other classes of controversies the public interest has been deemed so strong that a general principle of non-interference by injunction has been adopted with respect to them. Compare Act of March 2, 1867, 14 Stat. 475, R.S. § 3224; *Giles* v. *Harris*, 189 U.S. 475, 486; *Near* v. *Minnesota*, 283 U.S. 697, 719. Changed conditions in the community may lead a court to deny an injunction where otherwise it would be granted. *Texas & Pacific Ry. Co.* v. *Marshall*, 136 U.S. 393, 405; *Jackson* v. *Stevenson*, 156 Mass. 496; 31 N.E. 691; *Amerman* v. *Deane*, 132 N.Y. 355; 30 N.E. 741.

[3] Compare *Georgia* v. *Tennessee Copper Co.*, 206 U.S. 230, 238; *Hurley* v. *Kincaid*, 285 U.S. 95, 104, note 3; *York Haven Water & Power Co.* v. *York Haven Paper Co.*, 201 Fed. 270, 279–280. See also

If an injunction is granted the courses open to the City are (a) to abandon the present sewage disposal plant, erected at a cost of $60,000, and leave the residents to the primitive methods theretofore employed, if the State authorities should permit; or (b) to erect an auxiliary plant at a cost of $25,000 or more, if it should be legally and practically possible to raise that sum. That expenditure would be for a desirable purpose; but the City feels unable to make it. On the other hand, the injury to the Company is wholly financial. The pasture land affected by the effluent would be worth, it was said, $50 or $60 an acre if the stream were freed from pollution. Denial of the injunction would subject the Company to a loss in value of the land amounting, on the basis of the trial court's findings, to approximately $100 per year. That loss can be measured by the reduction in rental or the depreciation in the market value of the farm, assuming the nuisance continues; and can be made good by the payment of money. The compensation payable would obviously be small as compared with the cost of installing an auxiliary plant, for the annual interest on its cost would be many times the annual loss resulting to the Company from the nuisance. Complete monetary redress may be given in this suit by making denial of an injunction conditional upon prompt payment as compensation of an amount equal to the depreciation in value of the farm on account of the nuisance complained of. We require this payment not on the ground that the nuisance is to be deemed a permanent one as contended,[4] but because

---

*Daniels* v. *Keokuk Water Works*, 61 Iowa 549; 16 N.W. 705; *Simmons* v. *Paterson*, 60 N.J.Eq. 385; 45 Atl. 995; *Daughtry* v. *Warren*, 85 N.C. 136; *Elliott Nursery Co.* v. *Duquesne Light Co.*, 281 Pa. 166; 126 Atl. 345.

[4] Where a nuisance to real property results from a structure which is in character relatively enduring and not likely to be abated either voluntarily or by order of a court, it is frequently held that the nuisance is a permanent one; and if the prospective damages result-

to oblige the Company to bring, from time to time, actions at law for its loss in rental would be so onerous as to deny to it adequate relief.

*Second.* By the Company it is contended that the City should be enjoined because it had the power to condemn the land or its use for sewage purposes. The City questions the existence of that power. We have no occasion to determine this issue of Missouri law. Possession of the right of condemnation would afford added reason why compensation should be substituted for an injunction.[5] See *Osborne v. Missouri Pacific Ry.*, 147 U.S. 248, 259; *Winslow v. Baltimore & Ohio R. Co.*, 188 U.S. 646, 660; *Kamper v. Chicago*, 215 Fed. 706, 708; *Woodlawn Trust & Savings Bank v. Drainage District No. 2*, 251 Fed. 568, 570.

*Third.* By the City it is contended that under the Missouri law a permanent nuisance was created when the disposal plant was installed in 1923; that the cause of

ing therefrom can be estimated with reasonable certainty, the diminution in the value of the property is immediately recoverable as damages. *Highland Ave. & Belt R. Co. v. Matthews*, 99 Ala. 24; 10 So. 267; *Finley v. Hershey*, 41 Iowa 389; *Troy v. Cheshire R. Co.*, 23 N.H. 83; *Southern Ry. Co. v. White*, 128 Va. 551; 104 S.E. 865; compare *Fowle v. New Haven & Northampton Co.*, 112 Mass. 334, 338–339; *Ridley v. Seaboard & Roanoke R. Co.*, 118 N.C. 996, 1009; 24 S.E. 730. In some States the doctrine has been rejected. *E. g., Pond v. Metropolitan Elev. Ry. Co.*, 112 N.Y. 186; 19 N.E. 487. But in New York permanent damages may be imposed in equity as a condition of withholding an injunction, where the defendant has the right of eminent domain. *Pappenheim v. Metropolitan Elev. Ry. Co.*, 128 N.Y. 436; 28 N.E. 518. See, generally, Charles T. McCormick, Damages for Anticipated Injury to Land, 37 Harvard Law Review, p. 574; Note, Continuing and Permanent Nuisances, 9 Columbia Law Review, p. 538.

[5] Compare *Hulbert v. California Portland Cement Co.*, 161 Cal. 239, 245; 118 Pac. 928; *Hennessy v. Carmony*, 50 N.J.Eq. 616, 621; 25 Atl. 374; *Rhyne v. Flint Mfg. Co.*, 182 N.C. 489, 492; 109 S.E. 376.

action therefor accrued then to the Company's grantor; that this cause of action did not pass to the Company, and, indeed, has been barred by the statute of limitations; and that, hence, both injunction and damages should be denied. We have no occasion to determine the scope of the doctrine of permanent nuisance as applied in Missouri;[6] nor need we consider to what extent the local law on that subject would be accepted as controlling in the federal courts. This nuisance has at all times been removable by the device of secondary treatment of the sewage.[7] It may be hereafter abated at any time by the State health authorities requiring such treatment. The City may itself conclude that this should be done in the public interest, financial or otherwise. Being so terminable, pollution of the creek cannot be deemed to be a permanent nuisance as of the date of the installation of the disposal plant in 1923.

The decree is reversed and the cause remanded to the District Court for further proceedings to determine the depreciation in value of the property on account of the nuisance, and to enter a decree withholding an injunction if such sum be paid within the time to be fixed by that court.

*Reversed.*

---

[6] The doctrine of permanent nuisance has been applied in some cases by the Missouri courts. *Smith* v. *Sedalia*, 244 Mo. 107; 149 S.W. 597; *Blankenship* v. *Kansas Explorations*, 325 Mo. 998; 30 S.W. (2d) 471. It has been held, as a corollary, that the cause of action is single and arises at the time of the first injury, and that the statute of limitations runs from that date. *De Geofroy* v. *Merchants Bridge Terminal Ry.*, 179 Mo. 698, 720–721; 79 S.W. 386; *Kent* v. *Trenton*, 48 S.W. (2d) 571; see also *Hayes* v. *St. Louis & S. F. R. Co.*, 177 Mo. App. 201, 217; 162 S.W. 266. Compare *Powers* v. *Council Bluffs*, 45 Iowa 652; *Virginia Hot Springs Co.* v. *McCray*, 106 Va. 461; 56 S.E. 216.